**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Christina Stratton

    v.                                    Civil No. 11-cv-256-PB

Michael J. Astrue, Commissioner,
Social Security Administration

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Christina Stratton moves to reverse the Commissioner's decision denying her application for Social Security disability insurance benefits, or DIB, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income, or SSI, under Title XVI, 42 U.S.C. § 1382.  The Commissioner, in turn, moves for an order affirming his decision.  For the reasons that follow, I recommend that the matter be remanded to the Commissioner for further proceedings consistent with this report and recommendation.

### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda

Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir 1991)
(citations omitted).  Moreover, the court "must uphold the
[Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988).  Finally, when determining whether a
decision of the Commissioner is supported by substantial
evidence, the court must "review[] the evidence in the record as
a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v.
Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material
Facts, document no. 13.  That statement is part of the court's
record and will be summarized here, rather than repeated in
full.

Stratton was born in 1989.  She has two young children,
both of whom she is raising with assistance from her mother and
a friend.  She has relatively little work experience, but was
employed as a housekeeper, both in private homes and in a hotel,
until September 1, 2007, her alleged onset date.

Stratton has suffered from asthma since she was about six
years old, and experienced exacerbations of that condition in
2005, 2006, and 2007.  Since her alleged onset, Straton's asthma

has been treated with a nebulizer, an inhaler, and various medications including Prednisone, Doxycycline, Albuterol, Advair, and steroids.  She has also been diagnosed with depression, anxiety, and possible panic attacks.  Her mental condition has been treated with counseling and several medications, including Celexa, Ativan, and Zoloft.

Based on both the pattern of her treatment and her own testimony, it seems that for both asthma and anxiety, Stratton's health-care provider of choice is the emergency room, see Administrative Transcript ("Tr.") 32-33, which she has visited frequently.[1]  The record also suggests that Stratton's asthma and her anxiety symptoms tend to converge.  On several occasions she reported to the emergency room thinking that her shortness of breath was related to her asthma only to find that it was more likely to be a symptom of anxiety.  See, e.g., Tr. 259, 275. She has frequently reported shortness of breath as one of the symptoms of her anxiety.  See, e.g., Tr. 270, 273, 301, 341, 414, 417, 420.  Finally, in a May 5, 2009, note documenting a telephone conversation with Stratton's mental-health counselor, Jan Paquette, Dartmouth-Hitchcock's Dorice Reitchel reported:

---

[1] In April of 2009, Stratton telephoned or visited: (1) the Catholic Medical Center emergency room three times (Apr. 3, 10, and 20); (2) what appears to be an urgent-care unit at Dartmouth-Hitchcock six times (Apr. 14, 20, 21, 23, 28, and 29); and (3) the Elliot Hospital emergency room four times (Apr. 11, 19, 20, and 23).

> [C]hristina has articulated to [Paquette] that a
> family relative died having [an] asthma attack.
>
> [S]he therefore shows up in ed [er?], so that if she
> gets [an] attack, or [one] worsens, she'll be safe.
>
> [O]riginally, [J]an thought the anxiety was about the
> birth, but [it] seems to be about fear of [a] deadly
> asthma attack.

Tr. 284.

The record includes no medical opinions concerning

Stratton's physical capacity for work.  It does, however,

include a Physical Residual Functional Capacity ("RFC")

Assessment, see Tr. 156-63, completed by DDS Disability Examiner

Joanne Degnan in her capacity as a "single decisionmaker" (or

"SDM").[2]  Tr. 163.  Degnan concluded her RFC assessment with the

following comments:

---

[2] Magistrate Judge Cohen has explained what the term "single
decisionmaker" means:

> At oral argument, counsel for the commissioner
> clarified that the term "SDM" stands for "Single
> Decision Maker" and that SDM Crutcher was a Social
> Security Administration employee with no medical
> credentials.  Counsel explained that, as part of an
> experiment initiated in New Hampshire and Maine to
> expedite processing of applications, SDMs have been
> rendering initial decisions, with a medical expert
> (such as Dr. Johnson in this case) being consulted
> only upon reconsideration, if any.  Counsel agreed
> with the proposition that, for purposes of review by
> this court, a decision by a non-medical SDM such as
> Crutcher is entitled to no weight.

Goupil v. Barnhart, No. 03-34-P-H, 2003 WL 22466164, at *2 n.3
(D. Me. Oct. 31, 2003).  The SDM decision in Goupil concerned
the claimant's RFC.  See id.

Claimant has history of moderate asthma, controlled on albuterol and advair.  In 4/07 she was admitted for asthma exacerbation.  She had exacerbation in 11/07 while pregnant.  Consult indicated this was partially attributed to bronchitis.  She was also noted to possibly have seasonal/environmental allergies.  She was given oral prednisone and released as improved.

8/08 there was exacerbation.  Hx noted never having been intubated.  Also noted last exacerbation had been only one within last year.  She had recently been treated for cold by PCP.  Dx is asthma with bronchitis, given nebulizer tx.- antibiotic and robitussion.  3/29/09 seen in ER for similar sx; given duoneb and sent home as improved – at this time she was 15 weeks pregnant.  She was having SOB while picking up her toddler.  MD notes some of her asthma symptoms may be attributed to anxiety, stress of being overwhelmed with pregnancy and child care.  Her asthma was stable as of 4/1/09.  Chest xray 4/11/09 was negative.  Finally seen 5/12/09 for acute back pain related to fall in bathroom.  No further treatment other than by midwife according to claimant through 7/12/09.

PFTs were done in 5/07 and again in 6/08- both of these were read as normal and no significant response to bronchodilator.

. . . .

She has MDIs, not at listing level; she should function as shown in Section 1.[3]

Tr. 163.  The record also includes two Disability Determination

and Transmittal forms, both signed by Degnan.  See Tr. 52, 54.

In August of 2009, at the request of the Social Security

Administration, Dr. Lorene Sipes performed a psychological

consultive examination of Stratton, and completed a Mental

---

[3] Section 1 described a capacity for light work with several postural and environmental limitations.

Health Evaluation Report on her.  See Tr. 530-34.  Dr. Sipes
reported her opinions that Stratton had: (1) some limitations in
the area of activities of daily living, but generally functioned
well; (2) a limited ability in the area social functioning, but
was not precluded from functioning in that area; (3) some
limitations in the area of understanding and remembering
instructions, but generally functioned well; (4) no limitations
or minimal limitations in the area of concentration and task
completion; and (5) some limitations in the area of reaction to
stress and adaptation to work or work-like situations, but still
functioned satisfactorily.  Dr. Sipes diagnosed Stratton with
panic disorder with agoraphobia and gave the following
prognosis: "Stratton reported symptoms of panic disorder which
research has demonstrated to be effectively treatable.  She
reportedly takes medication as prescribed and attends
therapeutic services on an irregular basis.  Thus, it is my
clinical opinion that her prognosis is fair."  Tr. 533.  Dr.
Sipes concluded with the following recommendations:

> Stratton provided a coherent history and was able to
> effectively articulate sufficient [illegible]
> information to render a diagnosis and suggest
> effective treatment strategies.  Thus, her symptom
> presentation does not suggest the need for further
> assessment/testing.  She would likely benefit from
> medication management and individual therapy.

Tr. 534.

In August of 2009, state-agency consultant Dr. Edward
Martin completed a Psychiatric Review Technique form on Stratton
in which he took into account anxiety-related disorders.  See
Tr. 536-49.  Specifically, he identified panic disorder with
agoraphobia as "[a] medically determinable impairment [that was]
present that [did] not precisely satisfy the diagnostic
criteria" for anxiety-related disorders.  Tr. 541.  As for
functional limitations, Dr. Martin found mild limitations in
Stratton's abilities in the area of activities of daily living
and moderate limitations in two other areas: (1) maintaining
social functioning; and (2) maintaining concentration,
persistence, and pace.  He determined that Stratton had no
extended episodes of decompensation.

At the time he completed the Psychiatric Review Technique,
Dr. Martin also completed a Mental RFC Assessment on Stratton.
See Tr. 550-53.  In the summary conclusion section of the form
he filled out, Dr. Martin indicated moderate limitations in four
of the twenty listed functional abilities[4] and no significant
limitations in the remaining sixteen.  He then gave the
following assessment:

---

[4] Specifically, Dr. Martin found Stratton to be moderately
limited in her abilities to: (1) understand and remember
detailed instructions; (2) carry out detailed instructions; (3)
work in coordination with or proximity to others without being
distracted by them; and (4) get along with coworkers or peers
without distracting them or exhibiting behavioral extremes.  See
Tr. 550-51.

This is a 20 year old female alleging severe anxiety;
AOD 9/1/07, DLI 6/30/09, DI/DIB claim.  She further
states she does not like to be around large groups of
people.  There is no treatment of anxiety until around
4/1/09; therefore, there is insufficient evidence to
support AOD; MOD is set at 4/1/09 at the onset of her
treatment.  Given the absence of on-going treatment,
any impairments can be expected to last 12 months.

She was seen for intake only at Greater Manchester
Mental Health Center, and did not return.  There is
mention in primary care records of treatment of
anxiety and panic attacks with zoloft and ativan,
beginning in 4/09 with good response.  To provide AMS
and information on function, she is seen by Lorene
Sipes, Ph.D. (Consultative Examiner), on 8/20/09.  Her
opinions are given weight; supporting evidence
mentioned above is consistent with findings of exam;
claimant's statements are found partially credible.

Despite impairments, the claimant is able to
understand, remember, and carry out short and simple
instructions but not more detailed ones; special
supervision is not needed.  She is able to concentrate
on these types of instructions for 2 hour periods.
She is able to ask questions and request assistance.
In a work setting with minimal public/coworker
contact, she can get along with coworkers and
supervisors, respond appropriately to supervisory
criticism, and respond to changes in the simple work
setting.  Under these conditions she can complete a
full work day and week without interruptions from
psychologically based symptoms.

Tr. 552.

At the hearing on Stratton's claim, her counsel stated his

belief that "the records that we do have indicate that the

claimant does meet the asthma listing, 3.03-B."  Tr. 39  In

addition, the ALJ took testimony from a vocational expert

("VE"), to whom he posed a hypothetical question incorporating:

(1) a requirement that Stratton needed to avoid concentrated

exposure to respiratory irritants; and (2) the limitations
stated in Dr. Martin's Mental RFC Assessment.  The VE testified
that a person with such limitations could perform Stratton's
former work as a house cleaner, as well as several other jobs.

     After hearing, the ALJ issued a decision that includes the
following relevant findings of fact and conclusions of law:

     3.  The claimant has the following severe impairments:
     Asthma and anxiety (20 CFR 404.1520(c) and
     416.920(c)).

     . . . .

     4.  The claimant does not have an impairment or
     combination of impairments that meets or medically
     equals one of the listed impairments in 20 CFR Part
     404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
     404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

     . . . .

     5.  After careful consideration of the entire record,
     the undersigned finds that the claimant has the
     residual functional capacity to perform a full range
     of work at all exertional levels but with the
     following nonexertional limitations: the claimant must
     avoid exposure to respiratory irritants.  The claimant
     is able to understand, remember and carry out short
     and simple instructions but not more detailed ones.
     Special supervision is not needed.  She is able to
     concentrate on these types of instructions for 2-hour
     periods.  She is able to ask questions and request
     assistance.  In a work setting with minimal contact
     with the public and coworkers, the claimant can get
     along with coworkers and supervisors, respond
     appropriately to supervisory criticism, and respond to
     changes in the simple work setting.  Under these
     conditions, the claimant can complete a full workday
     and week without interruptions from psychologically
     based symptoms.

     . . . .

6.   The claimant has no past relevant work (20 CFR
404.1565 and 416.965).

. . . .

10.   Considering the claimant's age, education, work
experience, and residual functional capacity, there
are jobs that exist in significant numbers in the
national economy that the claimant can perform (20 CFR
404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 10, 11, 15, 16.  Based on the testimony of the VE, the ALJ

determined that Stratton had the capacity to work as a

groundskeeper (unskilled medium work), as a chambermaid

(unskilled light work), as an office helper (unskilled light

work), as an office mail clerk (unskilled light work), as a

plastic-hospital-products assembler (unskilled light work), and

as an eyeglass assembler (unskilled sedentary work).

## Discussion

According to Stratton, the ALJ's decision should be

reversed, and the case remanded, because the ALJ: (1) failed to

determine whether her asthma met or equaled a listed impairment;

(2)  failed to properly assess the credibility of her statements

about the symptoms of her impairments; and (3) made an RFC

assessment that was not supported by substantial evidence.

### A. The Legal Framework

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under

a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible

for supplemental security income, a person must be aged, blind,

or disabled, and must meet certain requirements pertaining to

income and assets.  42 U.S.C. § 1382(a).  The only question in

this case is whether Stratton was under a disability.

       For the purpose of determining eligibility for disability

insurance benefits,

       [t]he term "disability" means . . . inability to
       engage in any substantial gainful activity by reason
       of any medically determinable physical or mental
       impairment which can be expected to result in death or
       which has lasted or can be expected to last for a
       continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A)

(setting out a similar definition of disability for determining

eligibility for SSI benefits).  Moreover,

       [a]n individual shall be determined to be under a
       disability only if [her] physical or mental impairment
       or impairments are of such severity that [she] is not
       only unable to do [her] previous work but cannot,
       considering [her] age, education, and work experience,
       engage in any other kind of substantial gainful work
       which exists in the national economy, regardless of
       whether such work exists in the immediate area in
       which [she] lives, or whether a specific job vacancy
       exists for [her], or whether [she] would be hired if
       [she] applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB benefits); see also

42 U.S.C. § 1382c(a)(3)(B) (setting out a similar standard for

determining eligibility for SSI benefits).

12

To decide whether a claimant is disabled for the purpose of determining eligibility for either DIB or SSI benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. §§ 404.1520 (DIB) and 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Stratton's Arguments

To restate, Stratton argues that the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) failed to determine whether her asthma met or equaled a listed impairment; (2) failed to properly assess the credibility of her statements about the symptoms of her impairments; and (3) made an RFC assessment that was not supported by substantial evidence.  Stratton's first argument is persuasive, and dispositive.

In the heading of her first argument, Stratton contends that the "[t]he ALJ erred when he failed to determine whether [her] asthma met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 which is the third step of the mandatory sequential evaluation process."  Cl.'s Mem. of Law (doc. no. 12-1), at 3.  That is not an entirely accurate interpretation of the ALJ's decision, which includes his statement that he "reviewed the records with particular attention to Listing 3.03 and Listing 12.06," Tr. 10, and his determination "that the claimant does not have impairments that meet or equal the requirements of any section of Appendix 1,"

id.  Thus, the ALJ did determine that Stratton's asthma did not meet or equal Listing 3.03.

In the body of her argument, Stratton shifts gears.  Rather than contending that the ALJ failed to make a determination about whether her asthma met or equaled a listing, she points out, correctly, that while the ALJ did make the required determination, he did not support it with any analysis or discussion.[5]  She then characterizes that oversight as reversible error, and offers a preemptive refutation of any argument by the Commissioner that the ALJ's error was harmless.  She also argues that the ALJ erred by making a step-three determination that was not supported by any expert-opinion evidence, in violation of Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (S.S.A. 1996).  The court addresses each argument below, after making a preliminary observation about the circumstances of this case and setting out the legal principles that govern step-three determinations.

    1. Prelude

Before analyzing the arguments before it, the court pauses to observe that this is an unusual case, and not only because it

_____

[5] That is in sharp contrast with his determination that Stratton's anxiety did not meet or equal Listing 12.06, which he supported with a page-long discussion that included multiple references to Dr. Sipes's Mental Health Evaluation Report.  See Tr. 10-11.

involves a relatively rare challenge to an ALJ's step-three
determination.  Specifically, the court notes: (1) the
confluence of the presentation and symptoms of Stratton's
physical and mental impairments, discussed above; (2) the fact
that most of Stratton's treating sources are emergency-room
physicians, rather than office-based primary-care providers,
which diminishes the availability of traditional treating-source
medical opinions; and (3) the Commissioner's utilization of the
"single decisionmaker model" in this case, see 20 C.F.R. §§
404.906(b)(2) and 416.1406(b)(2).  Use of the "single
decisionmaker model," in turn, has resulted in both: (1) the
absence of an opinion from a state-agency physician on the issue
of medical equivalence (an issue at step three); and (2) the
lack of a Physical RFC Assessment from a state-agency physician.

### 2. Legal Principles

"[I]t is the claimant's burden to show that he has an
impairment or impairments which meets or equals a listed
impairment in Appendix 1."  Torres v. Sec'y of HHS, 870 F.2d
742, 745 (1st Cir. 1989) (citing Dudley v. Sec'y of HHS, 816
F.2d 792, 793 (1st Cir. 1987)).  An "impairment(s) is medically
equivalent to a listed impairment . . . if it is at least equal
in severity and duration to the criteria of any listed
impairment."  20 C.F.R. §§ 404.1526(a) and 416.926(a).  The

regulations go on to describe how the Commissioner determines
equivalence when a claimant has: (1) an impairment described in
20 C.F.R. Part 404, Subpart P, Appendix 1; (2) an impairment
that is not described in Appendix 1; or (3) a combination of
impairments.  See 20 C.F.R. §§ 404.1526(b)(1)-(3) and
416.926(b)(1)-(3).  In addition, "[d]eterminations of
equivalence must be based on medical evidence only and must be
supported by medically acceptable clinical and laboratory
diagnostic techniques."  Phelps v. Astrue, No. 10-cv-240-SM,
2011 WL 2669637, at *4 (D.N.H. July 7, 2011) (citing 20 C.F.R. §
404.1526(b); Mace v. Astrue, Civ. No. 08-14-BW, 2008 WL 4876857,
at *1 (D. Me. Nov. 11, 2008)).

### a. Inadequate Analysis

Stratton first argues that while the ALJ explained his
determination that her anxiety did not meet Listing 12.06, he
failed to do so with respect to her asthma and Listing 3.03.
The Commissioner offers no particular defense of the ALJ's
truncated discussion of Stratton's asthma at step three.  He
does, however, contend that Stratton has not adequately
developed her argument.  And, in reliance on Phelps, the
Commissioner contends that the ALJ's lack of explanation is a
harmless error, because his step-three determination is
supported by substantial evidence including both Degnan's SDM

17

determination and various pieces of medical evidence the ALJ
cited in his decision.

At issue here is whether Stratton's asthma, alone or in
combination with anxiety, meets or equals the following listing:

Asthma.  With:

. . . .

    B. Attacks (as defined in 3.00C), in spite of
prescribed treatment and requiring physician
intervention, occurring at least once every 2 months
or at least six times a year.  Each in-patient
hospitalization for longer than 24 hours for control
of asthma counts as two attacks, and an evaluation
period of at least 12 consecutive months must be used
to determine the frequency of attacks.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 3.03B.

At her hearing, Stratton put the ALJ on notice that she
believed her asthma met Listing 3.03.  And, as the ALJ noted in
his decision, albeit in the context of his RFC assessment,
Stratton alleged that she had visited the hospital six times
between August of 2009 and March of 2010 for treatment of her
asthma.[6]  That allegation speaks directly to the requirements of

---

[6] In Ollila v. Astrue, the court declined to consider the
claimant's step-three argument because "Plaintiff has not
indicated which listing(s) she believes that she meets or
equals, and has not cited any evidence in the record . . . in
support of her bare allegation that she meets a listing," Civ.
No. 09-3394 (JNE/AJB), 2011 WL 589037, at *11 (D. Minn. Jan. 13,
2011).  Here, by contrast, Stratton specifically identified
Listing 3.03B, which requires six asthma attacks within a
calendar year, and cites, as supporting evidence, the hospital
records documenting her numerous hospital visits for asthma
and/or anxiety, many of which include complaints of shortness of

Listing 3.03B.  Yet, in his decision, the ALJ's discussion of
equivalence, vis á vis asthma, is limited to this:

> The Disability Determination Service (DDS) determined
> that the claimant's impairments do not meet the
> criteria of any of the listed impairments.  No
> treating or examining physician has mentioned findings
> equivalent in severity to the criteria of any listed
> impairment.  The undersigned has reviewed the records
> with particular attention to Listing 3.03 [asthma] and
> Listing 12.06 [anxiety-related disorders] and finds
> that the claimant does not have impairments that meet
> or equal the requirements of any section of Appendix
> 1.

Tr. 10.  As the court has noted, the ALJ devoted a full page to
discussing non-equivalence to Listing 12.06, but said nothing
more about Listing 3.03, and at no point compared the
information in the records he reviewed with the specific
requirements of the asthma listing.  That is a problem.

"At step three of the sequential process, the ALJ is
generally required to elaborate as to which disability Listings
he considered in the process, and state reasons why Petitioner's
claim did not meet or equal the contemplated Listing." Zahm v.
Astrue, No. CV 08-176-LMB, 2010 WL 3515912, at *9 (D. Idaho Aug.
31, 2010).  "A boilerplate finding is insufficient to support a
conclusion that a claimant's impairment does not" meet or equal
a listed impairment.  Durbin v. Astrue, No. C11-935-TSZ-
JPD, 2011 WL 5877462, at *11 (W.D. Wash. Nov. 4, 2011) (quoting

---

breath.  That is enough to overcome the Commissioner's argument
that Stratton has not adequately developed her step-three
argument.

Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); citing Marcia
v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).  As Judge
Castillo recently explained:

> In this case, the ALJ's entire step three
> analysis related to Plaintiff's hepatitis C states
> only that "[t]he claimant's hepatitis C does not meet
> or medically equal the criteria of listing under 5.0
> chronic liver disease as there is no indication, nor
> does the claimant allege, the severity of his
> hepatitis C is sufficient to satisfy the requirements
> of the listing."  The Court concludes that this
> cursory statement does not fulfill the requirements
> that must be satisfied in order for the ALJ's decision
> to be based on "substantial evidence."  While the ALJ
> identified the listing relevant to Plaintiff's
> hepatitis C by name, she referenced no expert opinion
> and the single-sentence explanation does not meet the
> "more than perfunctory" requirement of Barnett [v.
> Barnhart, 381 F.3d 664, 668 (7th Cir. 2004) ("In
> considering whether a claimant's condition meets or
> equals a listed impairment, an ALJ must discuss the
> listing by name and offer more than a perfunctory
> analysis of the listing.")].

Cirelli v. Astrue, 751 F. Supp. 2d 991, 1003 (N.D. Ill. 2010)
(citation to the record omitted).

As to what would constitute an adequate determination,
Magistrate Judge Imbrogno's analysis in Davenport v. Astrue is
instructive:

> [T]he ALJ did not err in finding Plaintiff did not
> meet or medically equal a Listing under Sections 1.04,
> 14.00, and 11.00.  His step three findings discuss in
> detail the requirements of each Listing and reference
> specific evidence in the record to support his step
> three determination.

No. CV-09-0287-CI, 2011 WL 839280, at *4 (E.D. Wash. Mar. 7,
2011) (citations to the record omitted).  Judge Brimmer's order

in <u>McCaffery v. Astrue</u> provides a specific example of an
adequate step-three discussion:

> Contrary to plaintiff's argument, the ALJ
> provided specific and detailed findings at step three.
> The ALJ found that plaintiff's impairments did not
> meet or equal Listing 1.04 because there was no
> evidence of "spinal arachnoiditis, nor . . . evidence
> of nerve root compression characterized by neuro-
> anatomic distribution of pain, limited motion of the
> spine, motor, sensory or reflex loss."  The ALJ
> further found that there was no established medically
> acceptable imaging finding that plaintiff had "lumbar
> spinal stenosis resulting in pseudoclaudication."
> Additionally, objective clinical findings revealed "no
> significant focal strength or sensory deficits of the
> lower extremities," and no consistently positive
> straight-leg test findings in both the "sitting and
> supine positions."

No. 10-cv-01943-PAB, 2011 WL 4536980, at *6 (D. Colo. Sept. 30,
2011) (citations to the record omitted).  Here, the ALJ did not
even mention the requirements of Listing 3.03, much less adduce
evidence from the record to support his determination that
Stratton's asthma did not meet or equal that listing.

Rather, the ALJ's consideration of Listing 3.03 has much
more in common with the step-three determination found to be
deficient by Magistrate Judge Hillman in <u>Fiske v. Astrue</u>:

> While the burden is on the Plaintiff at this step to
> put forth evidence of an impairment, the ALJ must
> provide some analysis of that evidence in making the
> Listing determination in order for there to be
> meaningful review and consideration of the findings.
>
> The Court recognizes that the failure of the ALJ
> to make specific findings as to whether a claimant's
> impairment meets the requirements of a listed
> impairment is an insufficient reason solely for

21

setting aside an administrative finding.  See Senne v.
Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999); see also
Scheck v. Barnhart, 357 F.3d 697, 701 (7th Cir. 2004)
("It was unnecessary for the ALJ to articulate her
reasons for accepting the state agency physicians'
determination [that the claimant met the listing].").
Rather, the focus must be on whether there exists
substantial evidence in the decision as a whole for
the step three determination.  See Reyes Robles v.
Finch, 409 F.2d 84, 86 (1st Cir. 1969); cf. Rivera v.
Barnhart, Civ. Act. No. 04-30131-KPN (March 14, 2005)
(where Plaintiff failed to prove that his impairments
met the severity requirements for the particular
listing where substantial evidence was shown).

     Taking a broad approach, and considering the
decision as a whole, cf. Orlando v. Heckler, 776 F.2d
209, 213 (7th Cir. 1985) (refusing to require an ALJ
to lay out his determinations and supporting reasoning
in a "conclusion" section, as opposed to a
"discussion" section, and calling any such requirement
a "needless formality"), I find no analysis of the
evidence or any factual findings or comparative
language that discusses how the Plaintiff's
treatments, tests or episodes are different — or less
severe — than that which is considered in the Listing
for asthma.  Without such a basis, I am unable to
ascertain on this record whether the ALJ's finding
that the Plaintiff's asthma condition did not meet the
Listing requirements for a respiratory listing level
impairment was supported by substantial evidence.  It
is, therefore, beyond judicial review, see Clifton v.
Chater, 79 F.3d 1007 (10th Cir.1 996) and must be
remanded so that the ALJ can more fully develop the
record in greater detail with regard to the
requirements of Listing 3.00.

Civ. Action No. 10-40059-TSH, 2012 WL 1065480, at *9-10 (D.

Mass. Mar. 27, 2012); see also Freeman v. Astrue, No. CV-10-

0328-CI, 2012 WL 384838, at *4 (E.D. Wash. Feb. 6, 2012) ("Here,

the ALJ's conclusory finding at step three that 'evaluation of

the medical evidence does not support that the claimant meets

22

the criteria set forth by the listings as stated in 20 CFR Part
404, Subpart P, Appendix 1,' is insufficient to show that he
considered Plaintiff's articulated theory of equivalence.")
(citation to the record omitted).

As in Fiske, the ALJ's decision included "no analysis of
the evidence or any factual findings or comparative language
that discusses how the Plaintiff's treatments, tests or episodes
are different — or less severe — than that which is considered
in the Listing for asthma."  2012 WL 1065480, at *10.  Such a
lack of analysis may be harmless where the record includes
opinions on the question of equivalence from medical sources.
See, e.g., Phelps, 2011 WL 2669637, at *5 (holding that "the
state agency physician's opinion that claimant was not disabled
constitutes probative evidence of a lack of equivalence")
(citing Jones v. Astrue, No. 3:08-cv-00224, 2009 WL 2827942, at
*11-13 (S.D. Ohio Sept. 1, 2009)); Crenshaw v. Astrue, No.
3:09CV00041, 2010 WL 2292136, at *2-3 (W.D. Va. Apr. 22, 2010).
But, as to Stratton's asthma (either alone or in combination
with her anxiety), there is no medical opinion on equivalence in
the record, only the determination by Degnan, a non-physician
DDS disability examiner.  The Commissioner tries to save the
ALJ's decision by quoting a paragraph from his credibility
assessment that discusses some of the medical evidence.  That
could be viewed as an impermissible post hoc rationale.  See

23

Larlee v. Astrue, 694 F. Supp. 2d 80, 84 (D. Mass. 2010); see
also Lane v. Astrue, No. 1:10-CV-28 JD, 2011 WL 3348095, at *10
(N.D. Ind. Aug. 3, 2011) (citations omitted).  But even if the
court were to consider the portion of the ALJ's decision quoted
by the Commissioner, it does not track Listing 3.03 closely
enough to carry the day.  See Fiske, 2012 WL 1065480, at *10.
In sum, Stratton is entitled to a remand so that the ALJ can
conduct a proper step-three determination.

### b. Lack of Expert-Opinion Evidence

While the ALJ's failure to provide an adequate explanation
of his step-three determination, alone, warrants a remand, the
court will also discuss the second part of Stratton's step-three
argument, as it raises issues that are likely to come up on
remand.  The second part of Stratton's argument is that the ALJ
violated the requirements of SSR 96-6p by rendering a step-three
determination that was not supported by expert-opinion evidence.

Specifically, she argues that because "[n]o physician in
the record has opined whether or not [she] met or equaled a
listed impairment or a combination of listed impairments which,
in this instance, would be a combination of the listings of 3.03
and 12.06 . . . the ALJ usurp[ed] the role of a medical
professional by finding no medical equivalence."  Cl.'s Mem. of
Law (doc. no. 12-1), at 5.  In Stratton's view, the ALJ's

"failure to obtain an updated medical expert opinion regarding medical equivalency violate[d] the requirements of SSR 96-6p." Id.  Thus, she argues that "the ALJ in regard to his Step 3 analysis should not have ignored the asthma listing at 3.03 but rather should have called upon the services of a medical expert to advise as to whether or not the claimant's impairments from asthma and/or anxiety disorders, individually or in combination, met or equaled the severity of a listed impairment."  Cl.'s Mem. of Law (doc. no. 12-1), at 7.

The Commissioner rejects Stratton's "SSR 96-6p argument [as being] based solely on a technical error,"[7] id. at 8, that has no legal consequence due to Stratton's failure to demonstrate prejudice.  According to the Commissioner, Stratton is obligated to demonstrate prejudice because Social Security Rulings do not have the force of law.  He also points out that the decision as to whether to call for additional evidence from a medical advisor is left to the discretion of the ALJ.  Finally, he asks the court to extend the ruling in Phelps, that a "state agency physician's opinion that the claimant was not disabled constitutes probative evidence of a lack of equivalence," 2011 WL 2669637, at *5 (citation omitted), to cover opinion evidence from DDS decisionmakers.

---

[7] While the Commissioner concedes that the ALJ erred, he does not further identify the "technical error" he concedes.

SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge . . . is responsible for deciding the ultimate legal question whether a listing is met or equaled.  As trier of the facts, an administrative law judge . . . is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments.  However, longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight.

1996 WL 374180, at *3 (emphasis added); see also Barnett, 381 F.3d at 670 ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); Retka v. Comm'r of Soc. Sec., 70 F.3d 1272 (unpublished table decision), 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); Modjewski v. Astrue, No. 11-C-8, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 12. 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

SSR 96-60 treats equivalence determinations differently from determinations that an impairment meets a listing,

requiring expert-opinion evidence for the former but not the

latter.  Judge Ellison explains why:

> The basic principle behind SSR 96-6p is that while an
> ALJ is capable of reviewing records to determine
> whether a claimant's ailments meet the Listings,
> expert assistance is crucial to an ALJ's determination
> of whether a claimant's ailments are equivalent to the
> Listings.  See Frank [v. Barnhart], 455 F. Supp. 2d
> [554,] 558 & n.3 [(E.D. Tex. 2006)]. This is
> presumably because making an equivalency finding
> requires difficult medical judgments as to the
> severity of a claimant's ailments, judgments that are
> greatly assisted by consulting an expert.

Galloway v. Astrue, Civ. Action No. H-07-01646, 2008 WL 8053508,

at *5 (S.D. Tex. May 23, 2008).

The expert-opinion evidence required by SSR 96-6p can take

many forms, including "[t]he signature of a State agency medical

. . . consultant on an SSA-831-U5 (Disability Determination and

Transmittal Form)."  SSR 96-6p, 1996 WL 374180, at *3; see also

Field v. Barnhart, No. 05-100-P-S, 2006 WL 549305, at *3 (D. Me.

Mar. 6, 2006) ("The Record contains a Disability Determination

and Transmittal Form signed by Iver C. Nielson, M.D. . . .

discharging the commissioner's basic duty to obtain medical-

expert advice concerning the Listings question.").

In addition to noting the "longstanding policy" requiring

expert-opinion evidence on the issue of equivalence, SSR 96-6p

also describes the circumstances under which an ALJ is required

to obtain an updated medical opinion:

[A]n administrative law judge . . . must obtain an
updated medical opinion from a medical expert in the
following circumstances:

> * When no additional medical evidence is
> received, but in the opinion of the
> administrative law judge . . . the symptoms,
> signs, and laboratory findings reported in the
> case record suggest that a judgment of
> equivalence may be reasonable; or

> * When additional medical evidence is received
> that in the opinion of the administrative law
> judge . . . may change the State agency medical
> or psychological consultant's finding that the
> impairment(s) is not equivalent in severity to
> any impairment in the Listing of Impairments.

When an updated medical judgment as to medical
equivalence is required at the administrative law
judge level in either of the circumstances above, the
administrative law judge must call on a medical
expert.

1996 WL 374180, at *3-4 (footnote omitted).

Magistrate Judge Griffin has observed that "[t]he wording

of the . . . section[s] of SSR 96-6p [quoted above are]

convoluted and . . . can be easily misinterpreted." Lyke v.

Astrue, No. 3:08-0510, 2011 WL 2601435, at *15 (M.D. Tenn. Apr.

25, 2011). Still, it is evident that SSR 96-6p does two

different things; it requires record evidence in the form of an

expert opinion as the basis for a determination of equivalence

in the first instance, and then it identifies two circumstances

under which those medical opinions must be updated. See Lyke v.

Astrue, No. 3:08-cv-0510, 2011 WL 2601429, at *6 (E.D. Tenn.

June 30, 2011) (pointing out the distinction between the

evidentiary requirement of the longstanding policy and the limited circumstances under which the opinion required by the longstanding policy must be updated).

At first blush, Stratton's reliance on the update provision rather than the longstanding policy seems somewhat misplaced, given that the record in this case includes no expert opinion on equivalence that could be updated.  But, the case law on SSR 96-6p helps explain Stratton's strategy.  In Elliott ex rel. Elliot v. Astrue, the Commissioner argued that the ALJ satisfied the longstanding policy by basing his step-three determination on several SSA 832-U5 forms that were included in the record, see No. 10-cv-01548-WYD, 2011 WL 4485907, at *5 (D. Colo. Sept. 28, 2011).  After noting various deficiencies in those forms, which rendered them legally insufficient to satisfy the longstanding policy, see id. at *5-6, Judge Daniel ruled that under the circumstances, i.e., the lack of adequate expert-opinion evidence on equivalence, the ALJ abused his discretion by failing to obtain evidence from a medical expert, see id. at *6. In Sox v. Astrue, where the ALJ's decision "made no reference to any document in the record in which a state agency physician addressed whether plaintiff's alleged impairments equal[ed] a listing," Civ. Action No. 6:09-1609-KFM, 2010 WL 2746718, at *11 (D.S.C. July 2, 2010), Magistrate Judge McDonald remanded the case and "instructed [the ALJ] to obtain a medical expert

opinion on the issue of equivalence," id.; see also Caine v.
Astrue, No. C09-450-JCC-BAT, 2010 WL 2102826, at *8 (W.D. Wash.
Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence
on equivalence where none was in the record); Wadsworth v.
Astrue, No. 1:07-cv-0832-DFH-TAB, 2008 WL 2857326, at *7 (S.D.
Ind. July 21, 2008) (holding that where record included no
expert-opinion evidence on equivalence, "[t]he ALJ erred in not
seeking the opinion of a medical advisor as to whether Mr.
Wadsworth's impairments equaled a listing").  The lesson of
Elliott, Sox, Caine, and Wadsworth would appear to be that the
lack of expert-opinion evidence sufficient to satisfy the
longstanding policy described in SSR 96-7p is yet another
situation that triggers an ALJ's obligation to obtain a medical
opinion.

     All other things being equal, the court would have no
difficulty concluding that this case should be remanded due to
the lack of expert-opinion evidence on the question of
equivalence.  See, e.g., Barnett, 381 F.3d at 670; Retka, 1995
WL 697215, at *2; Carbajal v. Astrue, No. 10-cv-02025-PAB, 2011
WL 2600984, at *3 (D. Colo. June 29, 2011) (reversing and
remanding where record contained Disability Determination and
Transmittal form not signed by physician, Physical RFC
Assessment by non-physician disability examiner, but no "opinion
from a medical source on the issue of equivalence"); Galloway,

2008 WL 8053508, at *5 (holding that where medical opinion in the record made "no findings about whether Plaintiff's impairments [met] or equal[ed] the Listings" the ALJ "violated the requirements of SSR-96-6p [and] violated [his] duty to develop the record" by failing to obtain expert-opinion evidence on equivalence); Berrios-Vasquez v. Massanari, No. CIV. A. 00-CV-2713, 2001 WL 868666, at *8 (E.D. Pa. May 10, 2001) (remanding when "ALJ made the [step-three equivalence] determination without the benefit of the required opinion by a designated consultant"); but see Copenhaver v. Astrue, No. A-09-CA-838-SS, 2011 WL 891617, at *9 (W.D. Tex. Mar. 11, 2011) ("The opinion of a medical expert is not, as Copenhaver suggests, a mandatory part of the Commissioner's [step-three] analysis.").

There is, however, one wrinkle.  As noted, the record includes a Physical RFC Assessment in which DDS Disability Examiner Joanne Degnan, in her capacity as a single decisionmaker, stated that Stratton had medically determinable impairments "not at listing level."[8]  Tr. 166.  In Oakes v.

---

[8] Degnan's statement would be much more useful if it did not lump together two separate questions, i.e., whether Stratton's impairments met a listing and whether those impairments equaled a listing.  See Galloway, 2008 WL 8053508, at *5 (noting the evidentiary differences between meeting and equaling an impairment); Freeman, 2012 WL 384838, at *5 (explaining that ALJ's finding that an impairment does not meet a listing does not establish lack of equivalence); Shook v. Barnhart, Civ. Action No. 05-4107-JAR, 2006 WL 4080050, at *6 (D. Kan. Aug. 21, 2006) (requiring ALJ to make separate findings on both

Barnhart, the ALJ relied on an equivalence determination by a
SDM, see 400 F. Supp. 2d 766, 774 (E.D. Pa. 2005), and the
Magistrate Judge recommended "that the matter be remanded for
the taking of medical evidence on the subject of whether the
combination of her impairments equal[ed] a listed impairment,"
id. at 768.   Judge O'Neill did not adopt that portion of the
Report and Recommendation, ruling that the single-decisionmaker
model, described in 20 C.F.R. § 404.906(b)[9] and currently

---

questions, i.e., whether an impairment meets a listing and
whether it equals one).

   [9] The relevant regulations describe the single-decisionmaker
model in the following way:

        In the single decisionmaker model, the
   decisionmaker will make the disability determination
   and may also determine whether the other conditions
   for entitlement to benefits based on disability are
   met.  The decisionmaker will make the disability
   determination after any appropriate consultation with
   a medical or psychological consultant.  The medical or
   psychological consultant will not be required to sign
   the disability determination forms we use to have the
   State agency certify the determination of disability
   to us (see § 404.1615).  However, before an initial
   determination is made that a claimant is not disabled
   in any case where there is evidence which indicates
   the existence of a mental impairment, the
   decisionmaker will make every reasonable effort to
   ensure that a qualified psychiatrist or psychologist
   has completed the medical portion of the case review
   and any applicable residual functional capacity
   assessment pursuant to our existing procedures (see §
   404.1617).  In some instances the decisionmaker may be
   the disability claim manager described in paragraph
   (b)(1) of this section.  When the decisionmaker is a
   State agency employee, a team of individuals that

utilized in New Hampshire, see Goupil v. Barnhart, No. 03-34-P-
H, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003), "altered
the longstanding policy that an ALJ is required to seek a
medical opinion on the issue of equivalence," 400 F. Supp. 2d at
776.  Specifically, Judge O'Neill concluded that "under [20
C.F.R. § 404.906] an ALJ is fully competent to make the
disability determination and is not required to consult a
medical expert in the medical equivalency determination, but
rather should seek a medical consultation when appropriate."
Id. at 777.  Oakes, in other words, supports the Commissioner's
suggestion that the holding in Phelps could be extended to allow
Degnan's opinion to count as substantial evidence for the ALJ
step-three determination of non-equivalence.

        Judge O'Neill's decision in Oakes, however, seems to stand
alone.  Several subsequent decisions from other courts, while
not citing Oakes, have held that opinions such as the one
rendered by Degnan in this case do not satisfy the expert-
opinion-evidence requirement stated in SSR 96-6p.  For example,
in Williams v. Astrue, Magistrate Judge Hayes ruled that the
"ALJ failed to comply with Social Security Ruling 96-6p" when he

        includes a Federal employee will determine whether the
        other conditions for entitlement to benefits are met.

20 C.F.R. § 404.906(b)(2); see also 20 C.F.R. 416.1406(b)(2)
(same).

or she based a determination of non-equivalence on a Disability
Determination and Transmittal Form signed by a disability
examiner rather than a state-agency medical consultant, Civ.
Action No. 07-13451, 2008 WL 4401368, at *4 (W.D. La. Sept. 24,
2008).  It is not clear, however, whether the disability
examiner in Williams, was also a single decisionmaker.

    Colorado, however, like New Hampshire, is one of the states
participating in the SDM pilot program, see Velasquez v. Astrue,
No. 06-cv-02538-REB, 2008 WL 791950, at *3 n.4 (D. Colo. Mar.
20, 2011) (remanding where ALJ based RFC assessment on the
opinion of a SDM), and in two different cases from the District
of Colorado, judges have remanded when ALJs based their step-
three determinations on the opinions of SDMs.  In Carbajal,
Judge Brimmer remanded for a proper step-three determination
when the ALJ based his or her determination of non-equivalence
on a Disability Determination and Transmittal form that was not
signed by a physician and a Physical RFC Assessment completed by
a disability examiner, see 2011 WL 2600984, at *3.  In Elliot,
Judge Daniel ruled that a SSA 832-U5 form in the record "did not
constitute a medical opinion on the issue of functional
equivalence," 2011 WL 4485907, at *5, because it "was signed by
a single decision maker . . . who [was] not a medical
professional and whose opinion is thus not entitled to weight,"
id. (citing Klobas v. Astrue, No. 08-cv-02324-REB, 2010 WL

34

383141, at *5 (D. Colo. Jan. 29, 2010); Cunningham v. Astrue,
No. 09-cv-2535-SAC, 2010 WL 4737795, at *4 (D. Kan. Nov. 16,
2010)).

Based on the apparent difference of opinion between Oakes
on the one hand, and Carbajal and Elliott on the other hand, it
is not at all clear that 20 C.F.R. §§ 404.906(b)(2) and
416.1406(b)(2) actually eliminated the expert-opinion-evidence
requirement articulated in SSR 96-6p.  Moreover, even if this
court were to follow Oakes, it is not at all clear that under
the circumstances of this case, including the convergence of
Stratton's physical and mental impairments, it would be
"appropriate," Oakes, 400 F. Supp. 2d at 777, for the ALJ to
make a finding of non-equivalence without the benefit of a
medical consultation.  See Galloway, 2008 WL 8053508, at *5
(describing the "difficult medical judgments" involved in
equivalency determinations).  Accordingly, on remand, the ALJ
would be well advised to give serious consideration to securing
expert-opinion evidence on the question of equivalence.

As in Freeman, Stratton "might not succeed in proving [her]
impairments equal the listing level," 2012 WL 384838, at *6.
But, still, given the interrelationship between Stratton's
physical and mental impairments, "[n]either the ALJ nor this
court possesses the requisite medical expertise to determine if
[Stratton]'s impairments . . . in combination equal one of the

35

Commissioner's listings."  Id. at *5; see also Caine, 2010 WL 2102826, at *8 ("The Court declines to determine based on the record whether Caine's mental impairment, alone or in combination with his shoulder impairment, meets or equals a listing.  Rather, the Court recommends that this case be remanded with directions to obtain and consider an updated medical opinion regarding whether, based on all the evidence in the record, Caine's severe impairments, alone or in combination, meet or equal a listed impairment.").  Similarly, while an ALJ's improper reliance on a SDM opinion can fall into the realm of harmless error, see Williams, 2008 WL 4401368, at *5, the interrelationship between Stratton's physical and mental impairments would seem to preclude the court from ruling that the ALJ committed a harmless error when he made a step-three equivalence determination without adequate expert-opinion evidence to support it.

### c. Stratton's Remaining Arguments

Because this case is being remanded for the reasons described above, there is no need to fully discuss Stratton's remaining arguments.  Even so, because the issues Stratton raises are likely to arise on remand, the court addresses them briefly.

36

Stratton argues that the ALJ erred in assessing her RFC because his RFC assessment is not supported by any medical-source statements or opinions.  It appears to be well settled that an RFC assessment by a SDM does not qualify as substantial evidence on which an ALJ may rely when making an RFC assessment. See, e.g., Miller v. Astrue, No. 1:10cv1028-WC, 2012 WL 174589, at *3 (Jan. 23, 2012) (citing Casey v. Astrue, C.A. No. 07-0878-C, 2008 WL 2509030, at *3 (S.D. Ala. June 19, 2008); Velasquez, 2008 WL 791950, at *4; Bolton v. Astrue, No. 3:07-cv-612-HTS, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008)); Cunningham, 2010 WL 4737795, at *4 ("An SDM is not a medical professional of any stripe, and the opinion of an SDM is entitled to no weight as a medical opinion, nor to consideration as evidence from other non-medical sources.") (citation omitted); Goupil, 2003 WL 22466164, at *2 n.3 (D. Me. Oct. 31, 2003); cf. Ogden v. Astrue, No. 10-cv-02450-REB, 2012 WL 917287, at *4 (D. Colo. Mar. 19, 2012) (noting impropriety of ALJ's reliance on SDM opinion at step two).  Moreover, while the Commissioner argues that the ALJ was entitled to make a common-sense determination of the limitations resulting from Stratton's asthma, the court is not so confident that Stratton's RFC is amenable to a common-sense assessment by a layperson, given the interrelationship between her asthma and her anxiety.  Similarly, the court does not share the Commissioner's confidence that it has the expertise to

determine that the ALJ's reliance on the SDM's RFC assessment was a harmless error.  Cf. Freeman, 2010 WL 384838, at *5.  In any event, because the case is being remanded on other grounds, the Commissioner will have the opportunity to obtain a medical opinion on Stratton's RFC.

Finally, Stratton argues that the ALJ did not properly assess the credibility of her statements about her symptoms. Again, there is no need for a full-scale analysis of this issue. However, the court notes that the ALJ's credibility discussion could have been a bit more focused.  While the ALJ did touch on several of the Avery factors, see 797 F.2d at 29, he did not identify the specific statements he was evaluating, see Weaver v. Astrue, No. 10-cv-340-SM, 2011 WL 2580766, at *6 (D.N.H. May 25, 2011) ("As a starting point for the following analysis, it is necessary to identify the statement(s) at issue."), nor did he specifically state why he found Stratton's statements not to be credible, see Guziewicz v. Astrue, No. 10-cv-310-SM, 2011 WL 128957, at *7 (D.N.H. Jan. 14, 2011); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight.").  As with the RFC
assessment, the ALJ can address the credibility issue on remand.

**Conclusion**

For the reasons given, I recommend that: (1) the
Commissioner's motion for an order affirming his decision,
document no. 14, be denied; and (2) Stratton's motion to reverse
the decision of the commissioner, document no. 12, be granted to
the extent that the case is remanded to the Commissioner for
further proceedings, pursuant to sentence four of 42 U.S.C. §
405(g).

Any objections to this report and recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57
(1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch.
Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st
Cir. 2010) (only issues fairly raised by objections to
magistrate judge's report are subject to review by district

court; issues not preserved by such objection are precluded on

appeal).

_____

Landya McCafferty
United States Magistrate Judge


May 11, 2012

cc:  Jeffrey A. Schapira, Esq.
     Gretchen Leah Witt, Esq.